IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-01455-RBJ-BNB

MARLIN D. STAKELY,

Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on the plaintiff's **Complaint** [Doc. #1, filed 06/03/2011]. The Complaint seeks review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II, sections 216(j) and 223(d) of the Social Security Act, 42 U.S.C. §§ 416(j) and 223(d). The court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). This action has been referred to me for recommendation pursuant to 28 U.S.C. § 636(b). The matter has been fully briefed, obviating the need for oral argument. I respectfully RECOMMEND that the decision of the Commissioner be AFFIRMED.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff filed for disability insurance benefits on July 16, 2007, stating that he had been disabled since November 30, 2005. *Social Security Administrative Record* [Doc. #6] (the "Record"), p. 11.[1] His application was denied on November 16, 2007. Id. at pp. 64-66. The

---

[1] I refer to the page numbers of the Record as they are assigned by the parties, not as they are assigned by the court's docketing system.

plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. at p. 67. The hearing was held on February 18, 2009, and May 11, 2009. Id. at pp. 24-62. On October 7, 2009, the ALJ issued a written decision finding that the plaintiff is not disabled under sections 216(j) and 223(d) of the Social Security Act. Id. at pp. 11-23. The plaintiff requested a review of the ALJ's decision by the Appeals Council. Id. at p. 8. The Appeals Council denied the plaintiff's request for review. Therefore, the ALJ's decision is the final decision of the Commissioner of Social Security. Id. at p. 1.

## II. STANDARD OF REVIEW

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992); Brown v. Sullivan, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. Brown, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. Hedstrom v. Sullivan, 783 F. Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. Id.

### III.  THE LAW

A person is disabled within the meaning of the Social Security Act only if his physical and mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." Campbell v. Bowen, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. See Kelley v. Chater, 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1.  The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity.  A claimant who is working is not disabled regardless of the medical findings.

2.  The ALJ  must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

    3. The ALJ must then determine if the impairment meets or medically equals in severity certain impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.

    4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past work despite any limitations.

    5. If the claimant does not have the RFC to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and RFC.

20 C.F.R. §§ 404.1520(a)-(f). See also Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. Id. A finding that the claimant is disabled or not at any point in the five-step review is conclusive and terminates the analysis. Casias v. Secretary of Health & Human Services, 933 F.2d 799, 801 (10th Cir. 1991).

## IV. ANALYSIS

The ALJ found that (1) the plaintiff has not engaged in substantial gainful activity since November 30, 2007; (2) the plaintiff has the following severe impairments: arthritic changes in the cervical spine, status post fusion; cervical and shoulder girdle myofascial pain syndrome; left

cubital tunnel syndrome; and carpal tunnel syndrome; (3) the plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526); and (4) the plaintiff is capable of performing past relevant work as a military clerk. *Record*, pp, 13, 14, 21.

The plaintiff claims that the ALJ erred by failing to (1) properly evaluate his physical impairments at steps two and three of the evaluation process and (2) properly evaluate the opinions of Terry Struck, M.D., at steps four and five. *Plaintiff's Opening Brief* [Doc. #10], p. 4.

### A. Evaluation of Impairments

As a preliminary matter, any error made by the ALJ in determining the severity of the plaintiff's impairments at step two of the evaluation process "became harmless when the ALJ reached the proper conclusion that [the plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence." Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008). Therefore, I proceed to the analysis of whether the ALJ erred in step three when he determined that the plaintiff did not meet or equal a listing of the impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The Listing of Impairments "describes for each of the major body systems impairments that [are considered] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). An impairment meets the requirements of a listed impairment "when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction and meets the duration requirement." Id. at § 404.1525(c)(3). An impairment is medically equivalent to a listed

impairment in Appendix 1 "if it is at least equal in severity and duration to the criteria of any listed impairment." Id. at § 1526(a).

In finding that the plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairment in Appendix 1, the ALJ stated:

> The evidence of spinal changes, cubital tunnel syndrome and carpal tunnel syndrome does not establish the degree of joint deformity, nerve damage, muscle weakness, and inability to use the arms effectively that is required to meet Listing 1.00 ff. for orthopedic impairments, or Listing 11.00 ff, for neurological impairments.
>
> In reaching these conclusions, the undersigned considered the March 2009 opinion of treating physician Terry Struck, MD, who stated the claimant's condition had met the requirements of Listing 1.04(A) since August 2003 (Exh. 46F). Although Dr. Struck based her conclusions on clinical findings and weakness in a left C7 distribution, medically acceptable studies have failed to confirm any nerve root compression (Exhs. 17F, 18F, 44F).

*Record*, p. 14.

Listing 1.04A provides in pertinent part:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in a compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test . . . .

20 C.F.R. Part 404, Subpart P, Appendix 1.

The plaintiff argues that the ALJ erred in determining that the plaintiff did not meet the requirements for a disorder of the spine as found in Listing 1.04A because the ALJ failed to consider an Electromyogram Laboratory Report dated April 24, 2007. *Plaintiff's Opening Brief*, pp. 24-25. The electromyogram ("EMG") was performed by Bruce Peters, M.D., a neurologist. Dr. Peters reported the following impression:

> This study is abnormal and is suggestive of a very mild acute type left C5 distribution radiculopathy and also compatible with a chronic left C7 distribution radiculopathy.

*Record*, p. 411.

Dr. Peters sent a narrative report to the plaintiff's treating physician, Dr. Terry Struck, M.D., on April 24, 2007.  Id. at pp. 194-96. He stated:

> I did do an EMG/nerve conduction velocity study of the bilateral upper limbs and that is reported separately and it does show evidence of a left C7 radiculopathy which now appears to be chronic in nature with no acute denervative findings, suggesting this is a process which is relatively quiescent at this time, but there has been an injury to the left C7 nerve root which was addressed surgically and was operated on in 2004.
>
> Again, this problem appears to be related to an injury and event which occurred while working in his military duties. I did also find some evidence of mild more acute type denervation in the left C5 distribution. I think this indicates some ongoing irritation in the neck. I do not regard it as sufficient to warrant further surgical evaluation but it does appear that there is some additional cervical radiculopathy.

An ALJ should provide a sufficient explanation for his or her step three conclusion when making a disability determination. Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996). The purpose of the ALJ's explanation is to facilitate meaningful judicial review of the administrative decision. Id. However, where the ALJ relies on a lack of evidence to reach his conclusion that a

condition does not meet or equal a listing, and there is in fact no such evidence, the ALJ is not required to discuss the specific medical evidence in support of his conclusion. Groberg v. Asture, 415 Fed.Appx. 65, 72 (10th Cir. February 17, 2011).

Dr. Peters states that the EMG results are "suggestive of a very mild acute type left C5" radiculopathy and are "compatible with a chronic left C7" radiculopathy. *Record*, p. 411. The plaintiff does not identify any evidence or medical authority in the record to support the proposition that radiculopathy is the same as nerve root compression. To the contrary, the term "radiculopathy" is not synonymous with nerve compression; it broadly describes a disorder or disease of a nerve root. *Stedman's Medical Dictionary for the Health Professions and Nursing* 1422 (7th ed. 2012) (defining radiculopathy as a "disorder of the spinal nerve roots"); *Dorland's Illustrated Medical Dictionary* 1995 (31st ed. 2007) (defining radiculopathy as a "disease of the nerve roots" and defining cervical radiculopathy as "radiculopathy of cervical nerve roots, often manifesting as neck or shoulder pain"). See also Barker v. Astrue, 459 Fed.Appx. 732, 734 n.1 (10th Cir. February 15, 2012) (citing definition from medical dictionary to define social security claimant's diagnosis). Therefore, radiculopathy could mean that the affected nerves are merely temporarily irritated or inflamed, as indicated by Dr. Peters' description of the left C5 distribution radiculopathy as a "mild" and "acute" condition. Moreover, Dr. Peters' narrative description of the plaintiff's C7 distribution radiculopathy shows that it was addressed surgically in 2004; it is "relatively quiescent"; and there is no acute denervation. *Record*, p. 195. Thus, although Dr. Peters' EMG reports broadly suggest radiculopathy, they do not confirm that the plaintiff suffers from nerve root compression or that he meets or medically equals the Listing of

Impairments for disorders of the spine. Therefore, the ALJ was not required to discuss Dr. Peters' reports.[2]

Moreover, the record contains substantial evidence to support the ALJ's finding that the plaintiff does not meet the requirements for a disorder of the spine as found in Listing 1.04A:

 1. An EMG was performed in October 2004. Id. at pp. 519-23. The physician recorded an impression of "[s]igns consistent with the previous/chronic left C7 radiculopathy" and "[m]oderate left cubital tunnel syndrome." Id. at p. 521. There was no finding of nerve root compression.

 2. In November 2004, the plaintiff received an MRI scan of his cervical spine. *Record*, pp. 312-13. The impression was recorded as "[u]ncomplicated appearance status post anterior fusion at the C6-7 level"; "[m]inimal disc osteophyte complex at the C3-4 level, causing mild narrowing of the CSF space anterior to the cord"; and "[o]therwise, normal examination." Id. at p. 312. There was no nerve root compression noted. Id.

 3. In March 2005, the plaintiff received another EMG. Id. at pp. 865-66. The EMG impression was recorded as "[o]ngoing chronic left C7 radiculopathy unchanged from the prior EMG" and "[o]ngoing left cubital tunnel syndrome unchanged from the prior EMG." Id. at p. 865.

 4. In November 2006, the plaintiff received a third EMG. Id. at pp. 323-24. The impression was recorded as "[o]ngoing chronic left cubital tunnel syndrome"; "[c]hronic left C7 radiculopathy"; and "[m]ild right carpal tunnel syndrome." Id. at p. 324. The doctor also noted

---

[2] I note that the ALJ stated that he considered the plaintiff's evidence regarding spinal changes. *Record*, p. 14. Later in his decision, he specifically acknowledged Dr. Peters' nerve conduction study. Id. at p. 16. Thus, the record shows that the ALJ did consider Dr. Peters' study.

9

that a "[r]eport of a cervical MRI scan from 9/25/06 shows evidence of the previous C6-7 fusion. There are no other significant abnormalities." Id. at p. 323.

     5. In April 2008, the plaintiff received another MRI of his cervical spine. Id. at pp. 790-793. A direct comparison was made with an MRI performed in April 2004, and no changes were found. Id. at 790. There was no nerve root compression noted. Id.

The plaintiff "has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet *all* of the specified medical criteria' contained in a particular listing." Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar.22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)) (emphasis in Zebley). The plaintiff argues that he meets every requirement of Listing 1.04A based on excerpts from the notes of treating physicians. *Plaintiff's Opening Brief*, pp. 6-23. However, a treating source's medical opinion must be "well supported by medically acceptable clinical and laboratory diagnostic techniques." Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003). The plaintiff has not identified any clinical or laboratory diagnostic tests that show nerve root compression, and my review of the record does not reveal any.

The plaintiff argues that a record from the Department of the Air Force confirms "radiographic confirmation of nerve root compression." *Plaintiff's Reply Brief* [Doc. #12], p. 1. The record is a narrative summary dated April 2, 2005, by Douglas Hemler, M.D., a physician with the Occupational Medicine Department of the Air Force. *Record*, pp. 871-74. After taking a history and performing an examination, Dr. Hemler concluded that the plaintiff "sustained a Cervical 6-7 herniated disc and underwent cervical fusion at the C6-7 level. He did not have complete resolution of nerve root compression at the affected level." Id. at p. 873. There is no indication in Dr. Hemler's summary that he performed or reviewed any radiographic tests or that

he had access to the previous MRI or EMG results.³ Moreover, Dr. Hemler's diagnosis does not "overwhelm" the substantial evidence outlined above. Therefore, the ALJ's decision that the plaintiff does not meet Listing 1.04A is still supported by substantial evidence. See Musgrave, 966 F.2d at 1374.

The plaintiff further argues that the ALJ erred in failing to find that his impairments medically equal Listing 1.04A. *Plaintiff's Opening Brief*, pp. 25-27. Specifically, he argues:

> The ALJ failed to find as severe impairments [in step two of the analysis] the residual deficits in a left C7 distribution identified by [Dr. Peters' EMG report], degenerative disk disease at C4-C5 radiculopathy and left ulnar nerve neuropathy identified by electrodiagnostic testing at Ex. 19F (Tr. 323-324). It then becomes clear that the ALJ has not evaluated properly whether Mr. Stakely's impairments medically equal Listing of Impairment 1.04A.

Id. at pp. 25-26.

As discussed above, Dr. Peters describes the left C5 distribution radiculopathy as a "mild" and "acute" condition and the C7 distribution radiculopathy as addressed surgically in 2004, "relatively quiescent," and without acute denervation. *Record*, pp. 194-96. Exhibit 19F is a report of an EMG study by Jeffrey Jenks, M.D. Id. at pp. 320-24. Dr. Jenks' impression is (1) ongoing chronic left cubital tunnel syndrome; (2) chronic left C7 radiculopathy; and (3) mild right carpal tunnel syndrome. Id. at pp. 323-24. The plaintiff does not present any discussion regarding how Dr. Peters' and Dr. Jenks' studies show that the plaintiff's impairments at least equal in severity and duration all of the criteria of Listing 1.04A. He instead argues that the

---

³The plaintiff also cites an undated memorandum which states that the plaintiff has been medically disqualified from military duty for "Cervical 6-7 Herniated Disc treated with cervical fusion at the C6-7 level. Continued nerve root compression, restricted use of the left arm, cervical pain and migraine headaches." Id. at p. 882. This memorandum appears to be based on Dr. Hemler's report.

impairments are "severe" under step two of the sequential evaluation process. *Plaintiff's Opening Brief*, pp. 26-27.  I decline to make his arguments for him.

### B.  Evaluation of Dr. Struck's Opinion

The plaintiff argues that the Commissioner failed to properly evaluate the treating source opinions of Terry Struck, M.D., at steps four and five of the five-step sequential evaluation process. *Plaintiff's Opening Brief*, pp. 4, 28.  The opinion of a treating physician as to the nature and severity of a claimant's impairment is entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).

The Tenth Circuit Court of Appeals has stated:

> Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion. Further, the notice of determination or decision must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. . . .
>
> The regulations and agency rulings give guidance on the framework an ALJ should follow when dealing with treating source medical opinions relating to the nature and severity of impairments. An ALJ should generally give more weight to opinions from claimant's treating sources.  In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for controlling weight. An ALJ should keep in mind that it is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.
>
> The analysis is sequential.  An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and

> laboratory diagnostic techniques. If the answer to this question is no, then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight. The agency ruling contemplates that the ALJ will make a finding as to whether a treating source opinion is entitled to controlling weight. . . .
>
> But resolving the "controlling weight" issue does not end our review. In completing the analysis[,] adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927.
>
> Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.
>
> After considering the pertinent factors, the ALJ must give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion. Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.

Watkins v. Barnhart, 350 F.3d at 1300-01 (internal quotations and citations omitted).

### 1. Exhibit 14F

The plaintiff argues that in steps four and five of the evaluation process, the ALJ improperly failed to give controlling weight to Dr. Struck's opinions as expressed in Exhibit 14F. *Plaintiff's Opening Brief*, pp. 4, 28-30. Exhibit 14F is a "Physical Residual Functional

13

Capacity Questionnaire" in which Dr. Struck evaluates the plaintiff's functional limitations.

*Record*, pp. 279-283.

In determining the plaintiff's RFC in step four of the five-step sequential evaluation process, the ALJ addressed nine opinions regarding the plaintiff's physical capacities, including Dr. Struck's opinion as set forth in Exhibit 14F. The ALJ stated:

> In August 2007, Dr. Struck--a pain management specialist--completed a physical residual functional capacity evaluation in which she opined the claimant could lift 20 pounds rarely, 10 pounds occasionally and no amount of weight frequently. She felt he could sit for two hours, or stand and walk for two hours, during a normal workday, though he should remain on his feet for 30 minutes at one time. She also said he needed a 15-minute break every 30 minutes, that he should reach only 1% of the working day, and that climbing ladders and stooping should be done rarely, while twisting, crouching and climbing stairs could be done occasionally. Dr. Struck felt the claimant would be absent from work four days per month, though she further opined that his pain would seldom interfere with his concentration (Exh. 14F). The opinions of treating physicians are entitled to controlling weight if well supported by the medical evidence and not inconsistent with other substantial evidence (SSR 96-2p). But controlling weight cannot be accorded Dr. Struck's conclusions, as they are inconsistent with the results of the FCE, and there is no objective evidence to support any change in his functioning (Robinson v. Barnhart, 366 F.3d 1078 (10th Cir. 2004), quoting Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003); cases more recently cited in Besson v. Astrue, No. 06-cv-01263-LTB (D.Colo. 04/10/2007). Furthermore, only partial weight can be accorded Dr. Struck's conclusions, and only to the extent that they advise light exertional restrictions, rare climbing of ladders and little crouching. The remainder of her opinions appears to have been based solely on the claimant's subjective claims of pain, which are not fully supported by the medical evidence, as has been described, above.

Id. at p. 19.

The ALJ also addressed Exhibit 14F in step five of the five-step sequential evaluation process. In finding that the plaintiff is capable of performing past relevant work as a Military Clerk, the ALJ stated in part:

> Counsel then asked if jobs existed for an individual with the restrictions noted by Dr. Struck in Exhibit 14F. The vocational expert testified that no work would survive such additional restrictions, which included part time work and frequent breaks and absences. As has been mentioned, the undersigned rejects Dr. Struck's evaluation, as it is inconsistent with the results of the functional capacity evaluation, and other opinions are more consistent with the evidence as a whole.

Id. at p. 22.

Dr. Struck's opinion as expressed in Exhibit 14F was completed in August 2007. Id. at p. 283. The ALJ determined that Dr. Struck's opinion was not entitled to controlling weight because it was inconsistent with the results of a functional capacity evaluation ("FCE") performed in February 2007, and there was no objective evidence to support any change in the plaintiff's functioning since the FCE. Id. at p. 19.

The FCE is an objective test performed by Benchmark Physical Therapy in Aurora, Colorado. *Record*, pp. 325-339. The FCE indicates that the plaintiff can meet the demands of light work; can lift 30 pounds occasionally from floor to waist, 20 pounds occasionally from waist to overhead, and 31 pounds occasionally from shoulder height to overhead; carrying and frequent lifting from floor to waist and from waist to overhead are limited to 20 pounds; grip strength is measured at 112 pounds on the right and 89 pounds on the left; pushing and pulling is within the range of approximately 50 to over 100 pounds; the plaintiff has above average scores in the ability to reach above shoulder level on a sustained basis; prior to the test, the plaintiff

rated his pain as a "5 to 6" on the pains scale; and after the test, he rated his pain as a "7 to 8." Id. at pp. 325-26.

Dr. Struck's residual functional capacity evaluation (Exhibit 14F) opined that the plaintiff could lift 20 pounds rarely, 10 pounds occasionally, and less than 10 pounds frequently; he could sit for 2 hours and stand and walk for 2 hours during a normal workday; he could stand for 30 minutes at one time before needing to sit or walk; he needed a 15 minute break every 30 minutes; he should reach only 1% of the working day; climbing ladders and stooping should be done rarely; twisting, crouching, and climbing stairs could be done occasionally; and the plaintiff would be absent from work four days per month. Id. at pp. 279-83.

There are no medically acceptable clinical or laboratory diagnostic tests in the record to support Dr. Struck's opinion of the plaintiff's functional capacity. The plaintiff argues that Dr. Peters' reports support it,[4] but Dr. Peters' EMG test did not measure the plaintiff's functional capacity, it measured the plaintiff's nerve conduction velocity.[5] Id. at pp. 410-11; 194-96. Therefore, the ALJ applied the proper legal test in determining that Dr. Struck's opinion as expressed in Exhibit 14F was not entitled to controlling weight, and the record supports his determination.

---

[4]The plaintiff does not explain how the EMG test relates to his functional capacity, nor does he explain how the ALJ "improperly discounted" Dr. Struck's functional capacity opinion by failing to address the EMG test results.

[5]Dr. Peters did state that on physical examination, the strength in the plaintiff's "upper limbs including the trapezius, deltoid, biceps, triceps, grips, abductor pollicis brevis, abductor digiti minimi and first dorsal interosseus appears to be within normal limits. Reflexes are generally 1/1 in the biceps, 1/trace to 1 in the triceps and the neck range of motion is only minimally limited without evidence of Spurling's sign now." Id. at p. 195. Thus, neither Dr. Peters' physical evaluation nor the EMG test support Dr. Struck's opinion of the plaintiff's functional capacity.

The plaintiff argues that the ALJ did not provide proper deference to Dr. Struck's opinions when he assigned them partial weight because he did not properly weigh the factors provided in 20 C.F.R. § 404.1527. *Plaintiff's Opening Brief*, pp. 29-30. The factors are (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion with the record as whole; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527(c)(2)(i)-(ii); (c)(3)-(6); Watkins 350 F.3d at 1300-01.

The ALJ is not required to expressly apply each of the relevant factors in deciding what weight to give a medical opinion so long as the ALJ provides good reasons in the decision for the weight given to the treating source's opinion. Oldham v. Astrue, 509 F.3d 1254, 1259 (10th Cir. 2007).

The ALJ stated that he accorded partial weight to Dr. Struck's conclusions to the extent they advised light exertional restrictions, rare climbing of ladders, and little crouching. *Record*, p. 19. He determined that the remainder of Dr. Struck's opinions appeared to be based on the plaintiff's subjective claims of pain which were not fully supported by the medical evidence. Id. The ALJ extensively summarized the medical evidence in several pages of his opinion, and his summary is supported by the record. Id. at pp. 18-20. The ALJ satisfied the requirement that his "decision be sufficiently specific to make clear to any subsequent reviews the weight [he] gave to the treating source's medical opinion and the reasons for that weight." Oldham, 509 F.3d at 1258 (internal quotations omitted). Therefore, his failure to expressly apply each of the factors listed in section 404.1527 is not error.

The plaintiff further argues that "[p]rior to assigning 'partial weight' to Dr. Struck's opinions, the ALJ should have re-contacted Dr. Struck for clarification of any inconsistencies he felt were in her treatment notes, listing questionnaire and functional capacity assessment." *Plaintiff's Opening Brief*, p. 30. The plaintiff states that "[c]learly there was a need to re-contact Dr. Struck especially in light of the fact that the ALJ did not review or address [Dr. Peters' EMG report]." Id. at p. 31.

Under the governing regulations, the ALJ must re-contact a treating physician when the physician's information is "inadequate . . . to determine whether you [the claimant] are disabled." White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001). However, "it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the evidence the ALJ receives from the claimant's treating physician that triggers the duty." Id. (internal quotations omitted). Here, as in White, the ALJ did not find that Dr. Struck's opinion was so incomplete that it could not be considered; he rejected it after weighing all of the evidence. Therefore, the ALJ did not have a duty to re-contact Dr. Struck.

### 2. Exhibit 46F

The plaintiff argues that in steps four and five of the evaluation process, the ALJ improperly failed to give controlling weight to Dr. Struck's opinions as expressed in Exhibits 46F. *Plaintiff's Opening Brief*, pp. 4, 28-30. Exhibit 46F is a "Listing Questionnaire" in which Dr. Struck states that the plaintiff meets or equals Listing 1.04A based on clinical findings of "decreased sensation and weakness in the left C7 distribution." *Record*, pp. 798-99. The ALJ did not address this exhibit in steps 4 and 5 of the five-step sequential evaluation process, and it is not pertinent to steps 4 and 5.

The ALJ addressed Exhibit 46F in step 3 when he found that the plaintiff does not have an impairment or combination of impairments that meets or medically equals Listing 1.04A. Id. at p. 14. In doing so, he stated that he considered Exhibit 46F, and "[a]lthough Dr. Struck based her conclusions on clinical findings and weakness in a left C7 distribution, medically acceptable studies have failed to confirm any nerve root compression." Id. As discussed above, substantial evidence exists to support he ALJ's finding that the plaintiff does not have an impairment or combination of impairments the meets Listing 1.04A.

Moreover, Exhibit 46F is Dr. Struck's opinion that the plaintiff meets or equals Listing 1.04A. Treating source opinions are not afforded any special significance or controlling weight in the determination of issues reserved to the Commissioner, such as the determination of whether an impairment meets or equals a listing. 20 C.F.R. §§ 404.1527(d); Castellano v. Sec. of Health and Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994). Nevertheless, "opinions from any medical source about issues reserved to the Commissioner must never be ignored." Social Security Ruling 96-5P, 1996 WL 374183 (July 2, 1996). Rather, the "decision must explain the consideration given to the treating source's opinion(s)." Id.

The ALJ stated that he considered Dr. Struck's opinion but found that the plaintiff did not meet or medically equal Listing 1.04A because there were no medically acceptable studies that confirmed nerve root compression. Therefore, the ALJ did not ignore Dr. Struck's opinion, and he fully explained the consideration given to it.

## V. CONCLUSION

I respectfully RECOMMEND that the Commissioner's conclusion that the plaintiff is not disabled under the Social Security Act be AFFIRMED.[6]

Dated October 30, 2012.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge

---

[6] Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).